UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PETER COHN,

                      Plaintiff,                         **15-cv-3938 (FB)(JO)**

          -against-

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, THE BOARD
OF EDUCATION OF THE CITY SCHOOL
OF NEW YORK, ERIC STRAUSS individually,
and JAMES JOHNSON individually,

                      Defendants.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS


                         Respectfully submitted,

                         STEWART LEE KARLIN
                         LAW GROUP PC


                         s/Stewart Lee Karlin, Esq.
                         STEWART LEE KARLIN
                         Attorneys for Plaintiff
                         111 John Street, 22nd Floor
                          New York, NY 10038
                          (212)  792-9670

## TABLE OF CONTENTS

**Item**                                                                        **Page**

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-14

**PRELIMINARY STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATEMENT OF THE FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6

**Argument**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-14

**POINT I      APPLICABLE STANDARDS FOR A MOTION
              TO DISMISS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**POINT II     PLAINTIFF ENGAGED IN PROTECTED SPEECH
              AS A PRIVATE CITIZEN ON A MATTER
              OF PUBLIC CONCERN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-13

              **A.    The First Amendment Prima Facie Case** . . . . . . . . . . . . . . . . . . . . 8-9

              **B.    Plaintiff's Speech to the New York State Department of Education Testing
                      Division and the Board of Regents (Albany, NY office)
                      is clearly protected speech**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

              **C.    Plaintiff's Speech to the Principal is protected speech**. . . . . . . . . . . . . . 12-13

**POINT III    MUNICIPAL LIABILITY IS ESTABLISHED BECAUSE AGENCY
              OFFICIALS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2

**PRELIMINARY STATEMENT**

Plaintiff Peter Cohn respectfully submits this Memorandum of Law in opposition to Defendants' Motion to Dismiss.

**STATEMENT OF THE FACTS**

The amended complaint alleges the following: Plaintiff Peter Cohn (hereinafter Mr. Cohn or Plaintiff) is employed with the Defendant as an Earth Science teacher at the High School of Art and Design, 245 East 56th Street, New York, NY 10022 and has been employed from 2001 to date.  Plaintiff was tenured in 2005 and had received all satisfactory observations and year end ratings until his First Amendment activity. (Amended Complaint §§ 6-7)

Between June 15, 2011 to June 22, 2011, Plaintiff was part of the grading team for the New York State Regent Examination and he observed that another earth science teacher's students  (Mr. Marciano) had about a dozen students with 100 percent on the lab performance part of the test which is substantially higher than normal without coaching.  On June 27, 2011, Mr. Cohn advised Defendant James Johnson (Assistant Principal) about probable coaching and giving students foreknowledge of the test and Johnson immediately became angry and refused to take any information from him. On October 20, 2012 (Thursday morning) Defendant Eric Strauss (Principal) and Plaintiff had another conversation about Regents scores and he advised him about probable coaching by the other teacher. On November 4, 2011, the issue of the coaching was raised again with Strauss and Johnson.   In the following weeks the principal switched Plaintiff's rooms so he would move and teach in two different rooms.  (Amended Complaint §§ 8-11)

Specifically, Plaintiff told Strauss and Johnson that a fellow Earth Science Teacher at the school, coached his students on the lab practical portion of the Regents examination.  As to the lab practical portion of the exam, advanced coaching by a teacher is possible because the Earth Science teachers received the lab portion of the exam ahead of time, and were responsible for setting the test up and making the answer key.  Various ways of coaching students would be possible in order to increase their scores, including telling the students the instructions (which are long and detailed) ahead of time or pointing out to students what to look for in this exam questions.  (Amended Complaint § 12)

On January 6, 2012, Plaintiff received an unsatisfactory observation  regarding an observation conducted on January 5, 2012, was advised by Defendants Strauss and Johnson to transfer to another school, and advised Strauss and Johnson were angry with Plaintiff because of reporting the examination fraud.  This observation was written by Johnson at the instruction of Strauss.  On February 16, 2012, Plaintiff had another observation and received an unsatisfactory rating on February 27, 2012. On March 5, 2012, Plaintiff notified the New York State Department of Education Testing Division and the Board of Regents (Albany, NY office) by Certified Mail Return Receipt Requested.  Plaintiff repeated his assertion that another teacher probably provided students foreknowledge of the regent's lab test and that the Principal and Mr. Johnson refused to listen or discuss this.  On March 29, 2012, OSI came to see Plaintiff in the principal's office(Amended Complaint §§ 13-15)

On April 17, 2012, Plaintiff had another formal observation and received another unsatisfactory rating. In May 2012, Plaintiff received another unsatisfactory observation. On June

22, 2012 (the last day of school), Plaintiff received an annual performance review of unsatisfactory for the 2011-2012 school year.(Amended Complaint §§ 16-17)

It also should be noted that in September 2012, the high school moved from 1075 2nd. Ave, NY, NY to a new building. Mr. Johnson was no longer the Chairman of Math and Science and said duties were reassigned to Ms. Bernadette Mikolajaczyk, Chairman of the English department.  Ms. Mikolajaczyk was supposed to be Plaintiff's new Department Chair and she was supposed to conduct his observations and write the evaluations of his teaching. However, Mr. Strauss specially moved Mr. Johnson to conduct observations of Plaintiff.  The following five observation reports were all unannounced and conducted during 4th Period. This 4th period is the official attendance & announcement period, so there is extra paperwork and administrative issues that take time away from teaching. On November 30, 2012, an observation by Strauss and Johnson was rated unsatisfactory. On January 14, 2013, the observation by Strauss and Johnson was rated unsatisfactory.  On March 12, 2013, the observation by Strauss and Johnson was rated unsatisfactory. On May 6, 2013, another lesson was rated unsatisfactory. On May 28 2013, another lesson was rated unsatisfactory.  Finally on June 24, 2013, Plaintiff received another unsatisfactory annual performance review for the 2012-2013 school year.(Amended Complaint §§ 18-27)

Plaintiff was subjected, and is still being subjected to disparate treatment, and a hostile work environment due to retaliation for reporting test fraud.  As a direct result of complaining about improper governmental activity by the principal and others, Plaintiff received unsatisfactory ratings as set forth above. Plaintiff has been deprived of constitutionally protected speech and interests under the color of state law.  (Amended Complaint §§ 28-30)

Plaintiff has the right to complain internally and to the State of New York concerning such matters. Plaintiff's advocacy was separate and apart from any of his job responsibilities he had as a teacher but as a citizen expressing grave concern regarding matters that are of a public concern. In fact, Plaintiff's job responsibilities did not include complaining about examination fraud to the State of New York Education Department and the Board of Regents.  As a direct result of Plaintiff complaining to the State of New York, Plaintiff was retaliated against as set forth above.  Plaintiff was damaged in that because of the retaliatory unsatisfactory annual performance reviews he received, he was barred from summer per session work (which he had previously done) and also was not permitted to transfer schools within the DOE.  There were no legitimate reasons for the above conduct.  The only reason for said action is retaliatory due to Plaintiff speaking out regarding matters of public concern. (Amended Complaint §§ 33-37)

 Defendants violated the First Amendment of the United States Constitution by retaliating against Plaintiff because he spoke out externally and internally on matters of public concern relating to test fraud on the New York State Regent Examination.  Plaintiff's advocacy was separate and apart from his job duties.  Plaintiff was not mandated to speak out and petition the government and was not reasonably expected to do so pursuant to his duties as a teacher.  Plaintiff was speaking as a citizen regarding matters which are of a public concern and interest. There were no legitimate reasons for Defendants actions except retaliation due to Plaintiff's exercise of his First Amendment rights. (Amended Complaint §§ 41-43)

**ARGUMENT**

**POINT I**

**APPLICABLE STANDARDS REGARDING A MOTION TO DISMISS**

Under the Federal Rules, a claimant must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12 (b)(6), the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007)). In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a Plaintiff must plead enough facts to state a claim to relief that is plausible on its face. See Bell Atl Corp. v. Twombly, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a "court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted).

## POINT II

**PLAINTIFF ENGAGED IN PROTECTED SPEECH AS A
PRIVATE CITIZEN ON A MATTER OF PUBLIC CONCERN**

**A.     The First Amendment Prima Facie Case**

There is a sufficient factual basis in the record to find  that the Plaintiff actually made his

complaints in the capacity of a private citizen regarding matters of public concern.

Public employees do not forfeit their First Amendment rights by virtue of their

acceptance of government employment.  Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  In

Pickering, the Court held that to sustain a claim of retaliatory discharge based upon infringement

of free speech, a government employee must establish, by a preponderance of the evidence, that

what he said or did was a matter of public concern, and that his speech was a motivating factor in

the adverse action taken by the government employer. See 391 U.S. at 572-73.

In applying these principles, this Court has enunciated the parties' respective burdens

upon a public employee's claim of employer retaliation for the exercise of First Amendment

rights. Plaintiff , as a public employee, must prove that "(1) he engaged in constitutionally

protected speech because he spoke as a citizen on a matter of public concern; (2)he suffered an

adverse employment action; and (3) the speech was a `motivating factor' in the adverse

employment decision." Skehan v. Village of Mamaroneck. 465 F.3d 96, 106 (2d Cir. 2006),

overruled on other grounds by Appel v. Spirfdon, 531 F.3d 138, 140 (2d Cir. 2008).  The District

Whether an employee's speech addresses a matter of public concern rather than one of

purely private interest "must be determined by the content, form, and context of a given

statement as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). To

fall within the realm of "public concern," moreover, an employee's speech must "relat[e] to a ... matter of political, social, or other concern to the community." **_Id._** at 146.

In Mathews v. City of New York, Case No. 13–2915 ( decided February 26, 2015) the Second Circuit analyzed the Supreme Court decision under Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).      The Court held that the Plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Cox v. Warwick Valley Cent. School Dist., 654 F.3d 267, 272 (2d Cir.2011). Since the issue is whether the speech by Plaintiff is "protected speech" the Second Circuit conducted a two-step inquiry to determine whether a public employee's speech is protected:  In Mathews, the Court held that first the Court requires determining whether the employee spoke as a citizen on a matter of public concern. (citing Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., 391 U.S. 563, 568 (1968)). This step one inquiry in turn encompasses two separate sub questions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir.2011) In Mathews, the Second Circuit stated whether a public employee speaks as a citizen: (A) did the speech fall outside of the employee's "official responsibilities," and (B) does a civilian analogue exist? See Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y., 593 F.3d 196, 203–04 (2d Cir.2010).

In this case, there is little question that this is a matter of public concern.

**B.**   **Plaintiff's Speech to the New York State Department of Education Testing Division and the Board of Regents (Albany, NY office) is clearly protected speech**

In the case at hand, like *Mathews* complaining about a quota, Plaintiff was not addressing his own students, but commenting on other teachers providing assistance to students on the New York State Regents examination. He was under no compunction to report what he suspected to the New York State Department of Education and Board of Regents. The issue presented by the Defendant is whether the employee spoke as a citizen rather than solely as an employee. The District Court in Mathews held that the police officer complaining about quotas internally spoke as a public employee but the Second Circuit reversed holding that Matthews's speech to the Precinct's leadership in this case was not what he was "employed to do," In sum, Matthews's actual, functional job responsibilities did not include reporting his opinions on precinct-wide quota systems to the Precinct commanders. The Second Circuit held that when a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee.  In addition, the Court held that the existence of a comparable civilian analogue for Matthews's speech also supported the conclusion that he spoke as a citizen. Speech has a "relevant civilian analogue" if it is made through "channels available to citizens generally."

Here, complaining to the New York State Department of Education and the Board of Regents is clearly a civilian analogue and is protected speech.  In other words, as a matter of law, complaining to the New York State Department of Education Division of Testing is a relevant

civilian analogue that is available to citizens generally.

In order to defuse the civilian analogue argument and Mathews case, (tacitly acknowledging that the speech to New York State is protected speech)  the Defendants argue that the dye was already cast because much of the retaliation occurred prior to the complaints made about testing fraud to the State of New York.  First, this a uniquely factual determination that should not be made on a Motion to Dismiss as to whether Plaintiff's complaints on March 5, 2012 was causally related to the observations and final evaluations. Second, almost all the retaliation occurred soon and continuously after the March 5, 2012 complaints to the New York State Department of Education.  Only two observations occurred before March 5, 2012. Subsequent to March 5, 2012 the following occurred, March 29, 2012, OSI came to see Plaintiff in the principal's office.  Investigators told Plaintiff  not to discuss matters of coaching, cover up or harassment.(Amended Complaint §§ 13-15)  On April 17, 2012, Plaintiff had a formal observation and received an unsatisfactory rating. In May 2012, Plaintiff received another unsatisfactory observation. On June 22, 2012 (the last day of school), Plaintiff received an annual performance review of unsatisfactory for the 2011-2012 school year.(Amended Complaint §§ 16-17) On November 30, 2012, an observation by Strauss and Johnson was rated unsatisfactory. On January 14, 2013, the observation by Strauss and Johnson was rated unsatisfactory.  On March 12, 2013, the observation by Strauss and Johnson was rated unsatisfactory. On May 6, 2013, another lesson was rated unsatisfactory. On May 28 2013, another lesson was rated unsatisfactory.  Finally on June 24, 2013, Plaintiff received another unsatisfactory annual performance review for the 2012-2013 school year.(Amended Complaint §§ 18-27) Both evaluations and six out of the eight observations occurred after the complaints to New York State

Education Department and Board of Regents. Second, unlike the O'Connor v. Huntington

U.F.S.D., No.11-CV-1275 (JFB) (ARL), cited by Defendant that was decided prior to Mathews

on a summary judgment, not a motion to dismiss,  Plaintiff went outside the NYC DOE to the

New York State Department of Education in Albany, New York.

    **C.**    **Plaintiff's Speech to the Principal is protected speech**

Likewise as in Mathews, Plaintiff reported this practice to the highest official at the

school to wit, the Principal.  He did not have to but choose to protest an unofficial practice at the

school that directly benefitted the Principal because the regent scores bear directly on his

performance overall as a Principal.

Clearly, Plaintiff's job responsibilities do not include complaining to the Principal.

Accordingly, Plaintiff satisfies the Pickering's threshold requirement. See O'Connor v. Steeves, et

al., 994 F.2d 905, 913-14 (1st Cir.1993) (noting that "where public employee speaks out on topic

which is clearly a legitimate matter of inherent concern ... the court may eschew further inquiry

to employee's motives as revealed by 'form and context' of the expression"); accord Breuer v.

Hart, 909 F.2d 1035, 1039 (7th Cir.1990)  Public concern "is something that is a subject of

legitimate news interest; that is, a subject of general interest and of value and concern to the

public at the time of publication. San Diego v. Roe, 543 U.S. 77 at 83-84.(2004).

The fact that Plaintiff complained at work to his supervisor is not dispositive; defendants

have not shown that reporting potential cheating was within the province of plaintiff's

professional duties; and the complaints had nothing to do with his students, and his  job

performance, or his working conditions, and he had no responsibility to supervise the grading. In

Givhan v. Western LineConsolidated School District, 439 U.S. 410,411 (1979), where an English

teacher was dismissed primarily because she internally aired her grievances regarding the placement of Black people working in the cafeteria, the integration of the administration staff, and the placement of Black Neighborhood Youth Corps workers in semi-clerical positions was held to be protected speech.  Likewise, here the complaints to the Principal should be considered first amendment protected activity.

**POINT III**

**MUNICIPAL LIABILITY IS ESTABLISHED BECAUSE AGENCY OFFICIALS WITH FINAL AUTHORITY MADE THE DECISION CONCERNING PLAINTIFF**

Municipal liability attaches where the deprivation was caused by a policy or custom of the municipality or *by a municipal official "responsible for establishing final policy*. Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Municipalities are not entitled to qualified immunity for their actions, even where the individual officers who acted on the municipality's behalf would be.  Where the plaintiff contends that the constitutional deprivation was caused by an actor with final policymaking authority, the question of which municipal officials are the final policymakers is one of law, and the question is resolved by looking to relevant state law. Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir.2000) The plaintiff can prove the existence of a municipal policy or custom with proof that (1) a municipal official with final policymaking authority directly committed or commanded the constitutional violation; (2) a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy; or (3) a municipal policymaker failed to adequately train their subordinates, if such failure amounts to "deliberate indifference" to the rights of the individuals who interact with the

13

municipal employees. See <u>Jeffes v. Barnes</u>, 208 F.3d 49, 61 (2d Cir.2000) and <u>Ricciuti v. N.Y.C. Transit Auth</u>., 941 F.2d 119, 123 (2d Cir.1991).

Here, a municipal official with final policymaking authority directly committed or commanded the constitutional violation to wit, Principal Strauss.   Mr. Strauss has the final authority concerning observations and evaulations. . He establishes the policy, practice and custom at this school on behalf of the Defendant and thus there is municipal liability.

<u>**CONCLUSION**</u>

Plaintiff  respectfully submits that defendants, motion be denied in its entirety and any other relief that is just and equitable.

Dated: New York, New York
          May 11, 2016

Respectfully submitted,

THE LAW OFFICE OF
STEWART LEE KARLIN, P.C.


 s/Stewart Lee Karlin
STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, N.Y.  10038
(212) 792-9670

14