15 Civ. 3938 (FB) (JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER COHN,

                                  Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, THE BOARD OF EDUCATION OF THE CITY SCHOOL OF NEW YORK, ERIC STRAUSS individually, and JAMES JOHNSON individually,

                                  Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## ZACHARY W. CARTER
*Corporation Counsel of the City of New York*

Attorney for Defendants

100 Church Street, Room 2-125
New York, New York  10007
Of Counsel:  Steven A. Sutro
Tel:  (212) 356-2470
Matter No. 2015-030221

## TABLE OF CONTENTS

                                                                                                                                         **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

            PLAINTIFF PROVIDES NO LEGITIMATE
            GROUND TO OPPOSE DEFENDANTS' BASIS
            FOR DISMISSAL .................................................................................................. 4

                  A.        First Amendment Retaliation ..................................................... 4

                  B.        Plaintiff Was Speaking As a Public
                                  Employee, and Not a Private Citizen ........................................ 5

                  C.        Plaintiff Cannot Establish Monell
                                  Liability Against the DOE ......................................................... 8

CONCLUSION ......................................................................................................................... 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
PETER COHN,

                                                                                            Plaintiff,

                     -against-

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, THE BOARD OF EDUCATION OF THE CITY SCHOOL OF NEW YORK, ERIC STRAUSS individually, and JAMES JOHNSON individually,

                                                                                          Defendants.

------------------------------------------------------------------------ X

15 CV 3938 (FB)(JO)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiff Peter Cohn ("Plaintiff") is employed by the New York City Department of Education ("DOE") as a tenured Earth Science teacher. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, alleging that defendants DOE (sued herein as "The Department of Education of the City of New York, The Board of Education of the City School of New York") and Eric Strauss ("Strauss" or "Principal Strauss")[1] (collectively "defendants") retaliated against him for exercising his First Amendment right to free speech. Plaintiff alleges that he was part of a grading team for the New York State Regents Exam and had observed another Earth Science teacher with approximately a dozen students scoring "100" on the lab part of the exam, a score which plaintiff believed was accomplished by this teacher having "coached" these students.

---

[1] Upon information and belief, the individually-named defendant James Johnson has not been served with the summons and complaint filed in this matter, and the time to do so has long since expired. Accordingly, and notwithstanding the grounds for dismissal on the merits, James Johnson should be dismissed as a party.

Plaintiff alleges that after he reported his suspicion of improper "coaching" on the exam to the school, he received unsatisfactory classroom observation reports and was issued unsatisfactory performance ratings for the 2011 - 12 and 2012 - 13 school years.  Plaintiff thus contends that such observations and ratings of his performance resulted from his report to the school and asserts that such a correlation constituted First Amendment retaliation.

Defendants moved to dismiss the Amended Complaint on the grounds that it fails to state a plausible claim upon which relief can be granted.  Plaintiff's complaints about the alleged exam coaching were not constitutionally protected speech, and, as such, he cannot state a claim alleging retaliation for protected speech.  Plaintiff spoke as an employee, not a citizen, and therefore he cannot state a plausible claim.

Plaintiff has opposed the motion by citing to case law on general standards regarding First Amendment retaliation.  See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opp.").  Importantly, Plaintiff's Opp. makes no effort, nor is able, to distinguish the dispositive case law cited in defendants' original moving papers, analogous and instructive here, that held that a teacher complaining about grading improprieties did not speak as a citizen and therefore, as a matter of law, the speech was not protected speech.

Consequently, the Amended Complaint must be dismissed for failure to state a plausible claim upon which relief may be granted.

## STATEMENT OF FACTS[2]

Plaintiff is a tenured Earth Science teacher with the DOE.  See Am. Compl. ¶ 6. Plaintiff was part of a "grading team" for the New York State Regents Examination between

---

[2] This factual statement is derived from the allegations set forth in the Amended Complaint solely for the purposes of this motion and defendants neither admit nor deny these allegations.

June 15 and June 22, 2011.  See id. ¶ 8.  While grading the Regents Examinations, plaintiff observed that about a dozen students of another Earth Science teacher's class received a grade of "100 percent" on the lab performance part of the exam.  See id.  Plaintiff believed that this number of perfect scores "is substantially higher than normal without coaching."  See id.

Plaintiff soon thereafter, on June 27, 2011, spoke with the school's Assistant Principal about his suspicion that the other teacher had coached his students by giving them foreknowledge of the test.  See id. ¶ 9.  On October 20, 2011, plaintiff discussed his coaching suspicions with defendant Principal Strauss.  See id. ¶ 10.  On November 4, 2011, plaintiff raised his concerns about the grading improprieties again with the Assistant Principal and with Principal Strauss.  See id. ¶ 11.  During these conversations, plaintiff explained to the Assistant Principal and to Principal Strauss that he believed

> that a fellow Earth Science Teacher at the school, coached his students on the lab practical portion of the Regents examination.  As to the lab practical portion of the exam, advanced coaching by a teacher is possible because the Earth Science teachers received the lab portion of the exam ahead of time, and were responsible for setting the test up and marking the answer key.  Various ways of coaching students would be possible in order to increase their scores, including telling the students the instructions (which are long and detailed) ahead of time or pointing out to students what to look for in this [sic] exam questions.

See id. ¶ 12.

Plaintiff alleges that following the November 4, 2011 conversation, Principal Strauss switched plaintiff's classrooms.  See id. ¶ 11.  On January 6, 2012, plaintiff received an unsatisfactory classroom observation from the Assistant Principal "at the instruction of [Principal] Strauss."  See id. ¶ 13.  On February 27, 2012, plaintiff received another unsatisfactory classroom observation.  See id. ¶ 14.  Seven days later (and eight months after

3

plaintiff first suspected grading improprieties) on March 5, 2012, plaintiff contacted the New York State Department of Education Testing Division and the Board of Regents via mail and repeated his suspicion that another Earth Science teacher coached his students for the Regents exam.  See id. ¶ 15.  In April and May, 2012, plaintiff received two more unsatisfactory classroom observations and received an annual performance review of unsatisfactory for the 2011-12 school year.  See id. ¶¶ 16-17.  During the following school year, plaintiff received five unsatisfactory classroom observations and received another year-end unsatisfactory annual performance review.  See id. ¶¶ 22-27.

## ARGUMENT

**PLAINTIFF PROVIDES NO LEGITIMATE GROUND TO OPPOSE DEFENDANTS' BASIS FOR DISMISSAL.**

**A.    First Amendment Retaliation**

As set forth in defendants' opening brief, to prevail on a First Amendment retaliation claim, a public employee must demonstrate, among other things, that the speech at issue was protected by the First Amendment.  See Ruotolo v. City of New York, 514 F.3d 184, 188-189 (2d Cir. 2008).  Protected speech requires the employee to have spoken as a citizen on a matter of public concern.  This inquiry involves two separate requirements, both of which must be met: (1) the employee must speak as a citizen, rather than as a public employee; and (2) the employee must speak on a matter of public concern.  See Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  If the employee's speech does not satisfy *both* requirements, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  See Garcetti, at 418 (citing Connick v. Myers, 461 U.S. 138, 147 (1983)).

4

The speaker's role likewise is paramount, and, as such, "two relevant factors that, considered in isolation, are not dispositive are whether the speech occurred in the workplace and whether the speech concerned the subject matter of the employee's job." See O'Connor v. Huntington U.F.S.D., No. 11-CV-1275 (JFB)(ARL), 2014 U.S. Dist. LEXIS 39596 at *18-19 (E.D.N.Y. Mar. 25, 2014) ("O'Connor") (internal citation omitted). If the employee was acting pursuant to his official duties, then he was not speaking as a citizen and his speech is not entitled to First Amendment protection. See Garcetti, 547 U.S. at 421.

**B.     Plaintiff Was Speaking As a Public Employee, and Not a Private Citizen**

As summarized in defendants' opening brief, plaintiff spoke as an employee, not a citizen, and therefore cannot state a claim upon which relief can be granted. Indeed, this case is analogous to O'Connor, which was dismissed, with the Court holding that the teacher

> spoke as a public employee, rather than as a private citizen, when he complained about potential grading improprieties. This determination is consistent with those by other courts that conclude that such internal complaints by teachers about their colleagues' professional misconduct based upon information learned through the teachers' positions constitute speech as a public employee that is not protected by the First Amendment.

See O'Connor, at *29 (internal citations omitted). See also Defendants' Opening Brief, at 6-7.

In response to Defendants' reliance on O'Connor, Plaintiff offers the Second Circuit's later decision in Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015), on which Plaintiff's Opp. heavily relies. See Plaintiff's Opp. at 12. However, this argument fails. The Matthews decision did not purport to change the established case law on the question of whether speech is made as a citizen versus a public employee. In fact, subsequent cases citing Matthews have continued to dismiss complaints where, under the well-established case law, a plaintiff spoke as a public employee, and not a citizen, and therefore the speech was not protected under

5

the First Amendment. See e.g., Mcguire v. City of New York, No. 12-cv-814 (NGG), 2015 U.S. Dist. LEXIS 164856 at *11-13 (citing Matthews, as well as Garcetti and Weintraub, in describing the standard to determine whether speech was made as a citizen or an employee.).

Plaintiff further attempts to distinguish the otherwise persuasive – and directly on point – holding in O'Connor by contending that O'Connor was decided on summary judgment. See Plaintiff's Opp. at 12. Putting aside that the O'Connor defendants chose to first raise their ultimately dispositive argument in a motion for summary judgment, rather than in a motion to dismiss, any distinction here is without a difference. Indeed, the O'Connor holding is as a matter of law, and did not turn on facts materially different from those alleged in this instant matter. Any claim flowing from those facts, and the allegations made both in O'Connor and here, are flatly rejected by the O'Connor determination, as a matter of law, that a teacher who made complaints regarding grading irregularities did not speak as a private citizen. Under this direct precedent, which relies on well-established law, no plausible claim exists here. Additionally, the question of whether speech was made as an employee or as a citizen is properly and routinely decided at the motion to dismiss stage. See e.g. White v. City of New York, No. 13-cv-7156 (ER), 2014 U.S. Dist. LEXIS 123255, *29-30 (S.D.N.Y. Sept. 3, 2014) (granting motion to dismiss where speech at issue was obviously "that of a concerned teacher, not a concerned citizen."); Rodriguez v. Int'l Leadership Charter Sch., No. 08 Civ. 1012 (PAC), 2009 U.S. Dist. LEXIS 26487, *9-10 (S.D.N.Y. Mar. 30, 2009) (granting defendant's motion to dismiss, holding that a teacher's complaint, about in-school problems that impacted the students, to an independent state agency did not change the fact that she spoke as an employee, pursuant to her professional duties, and therefore the teacher could not state a claim for First Amendment retaliation). Plaintiff's attempt to distinguish O'Connor thus fails.

6

Plaintiff attempts to analogize the facts of this case with that of Matthews, 779 F. 3d 167, (see Plaintiff's Opp. at 10), contending that a police officer's complaints about a precinct-wide quota policy (which was held to be speech made as a citizen) is no different than a teacher's complaints about another teacher's suspected grading improprieties. See id. That contention plainly fails, however, as

> there is no question that reporting grade irregularities or any other cheating . . . is part-and-parcel of his job duties as an assigned grader on a particular exam, as well as his general duties as a teacher. Ensuring the integrity of the taking and the grading of exams is a quintessential duty of a teacher.

O'Connor, at *23 (internal citation omitted). The Supreme Court in Garcetti cautioned that determining whether a public employee spoke within the scope of his professional duties requires a "practical" inquiry. See Garcetti at 424. Such a practical assessment of plaintiff's attempt to analogize a policeman's complaints about a precinct-wide arrest quota policy to a teacher's complaints about grading improprieties reveals the attempt to be altogether unavailing.[3] Plaintiff's Opp. also argues that plaintiff's complaints to his supervisors "had nothing to do with his students," in arguing that his complaints were not part of his professional duties. However, "even though it did not involve students that he taught on a regular basis, there is no question that reporting grading irregularities or any other cheating in that situation is part-and-parcel of his job duties as an assigned grader on that particular exam, as well as his general duties as a teacher." See O'Connor, at 23.

---

[3] Plaintiff's Opp. similarly attempts to argue that a teacher's complaints about grading irregularities is speech analogous to a teacher's complaints about racial integration in a school. See Plaintiff's Opp. at *12-13. Again, this analogy is misplaced – particularly in light of the plain import of O'Connor, and the case law cited by plaintiff illuminates little on the case at bar.

7

Plaintiff's Opp. also puts great weight behind the argument that because plaintiff also complained to the New York State Department of Education, after making numerous internal complaints to his supervisors, he spoke as a citizen and not an employee. See Plaintiff's Opp. at 10.  Even assuming this speech was via a "civilian analogue" this factor is <u>not dispositive</u>. See O'Connor at *29.  And, like in O'Connor, the complaints here were first made internally to plaintiff's supervisors.  These complaints were the bulk of the speech at issue.  Plaintiff contends that whether plaintiff's complaints to the State were "causally related to the" alleged retaliation is "a uniquely factual determination that should not be made on a Motion to Dismiss."  See Plaintiff's Opp. at 11.  However, this misconceives the motion to dismiss standard, which examines whether plaintiff has sufficiently alleged, and could ever establish, his prima facie claim.  Defendants, for the purposes of this motion, must accept as true all of the facts in the Amended Complaint.  Thus here, accepting these facts, and applying the pertinent case law to them – and particularly guided by O'Connor, a "practical inquiry" shows that plaintiff has failed to state a plausible claim for First Amendment retaliation.

C.     **Plaintiff Cannot Establish Monell Liability Against the DOE**

Plaintiff argues that municipal liability is established in this case because Principal Strauss "has the final authority concerning observations and evaluations, "claiming that "[h]e establishes the policy, practice and custom at this school on behalf of the Defendant and thus there is municipal liability." See Plaintiff's Opp. at 14.  This is utterly unsupportable as a matter of law and must be rejected. See, e.g., Collins v. Stasiuk, 56 F. Supp. 2d 344, 346 (S.D.N.Y. 1999)("If plaintiff's argument had merit, then every decision by a high-ranking official to hire or fire would constitute a 'policy' with respect to the affected individual, and every senior decisionmaker who had ultimate authority over anyone's employment would be deemed to have 'final authority over policy' within the meaning of the McMillian exception to Monell.  The

8

absurdity of that result -- which would effectively vitiate Monell -- is apparent on its face."); see also Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000)("Where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law.").

Plaintiff cannot, as a matter of law, establish that his school principal's conduct represents official policy. Accordingly, his claim against the DOE, as well as all claims against all defendants, must be dismissed.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that this Court grant their motion to dismiss the Amended Complaint in its entirety and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 3, 2016

                                        **ZACHARY W. CARTER**
                                        Corporation Counsel of the
                                           City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-125
                                        New York, New York 10007
                                        (212) 356-2470
                                        ssutro@law.nyc.gov

                        By:    /s/
                                            Steven A. Sutro
                                            Assistant Corporation Counsel

Maxwell D. Leighton,
Steven A. Sutro,
  Of Counsel.